```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
REMEDE CONSULTING GROUP INC., and            :
JEROME DANIEL, PRESIDENT & CEO,              :
                                             :
                       Plaintiff,            :            REPORT & RECOMMENDATION
                                             :
        -against-                            :            19 Civ. 3950 (NGG) (VMS)
                                             :
SHEDRICK HAMER,                              :
                                             :
                       Defendant.            :
                                             :
------------------------------------------------------------ X
```

**VERA M. SCANLON, United States Magistrate Judge:**

Before the Court on referral from District Judge Nicholas G. Garaufis is a motion by Remede Consulting Group Inc. ("Remede") and Jerome Daniel (collectively, "Plaintiffs") to remand their action to the Supreme Court of the State of New York, Nassau County. For the following reasons, the undersigned respectfully recommends that Plaintiffs' motion be denied.

**I.    BACKGROUND**

This action arises out of Defendant's former employment with Plaintiffs. Compl., ECF No. 1-1, generally. According to the Complaint, Plaintiffs operate a professional and technical staffing agency providing staff support to nursing homes and other medical clients. Id. ¶ 5. In January 2016, Plaintiffs hired Defendant Shedrick Hamer ("Defendant") as a Travel Recruiter under the terms of an employment contract dated December 30, 2015 (the "Employment Agreement" or the "Agreement"). Id. ¶ 6. The Agreement provided, inter alia, that the employee would have access to valuable trade secrets and documents which must not be disseminated, taken or shared, and that the employee must not solicit other employees of Plaintiffs for a period of two years after the termination of his employment. Id. ¶ 7. In January

1

2017, Defendant was promoted to Manager, Recruitment & Accounts. Id. ¶ 6. In this capacity, Defendant had "total access to company trade secrets and access to full recruitment lead, employee and client lists." Id. ¶ 9. On or about February 6, 2019, Defendant "abruptly resigned without notice or cause" and, just prior to his resignation, took valuable recruitment lead information from two recruitment database for which Remede has access via paid subscriptions. Id. ¶¶ 12-13. Plaintiffs allege that "[t]hese recruitment leads constitute valuable trade secrets and confidential proprietary information [for] [Defendants]," and that the potential lost revenue for each lead is, on average, $32,760.00. Id. ¶¶ 19-20. In addition to these two recruitment databases, Plaintiffs maintain a single database of all clients, employees and prospects since the company's inception (referred to herein as the "RCG database") which "generated $11.1 million in revenue in 2018." Id. ¶ 21. Electronic records show that Defendant "exported and downloaded a total of 36,953 leads on January 28, 2019 as well as exported and downloaded a total of 3,183 clients' files on the same date" just before his resignation to use for his own capital gain elsewhere. Id. ¶ 22; see also Mot. Rmd. ECF No. 11-5 p. 4 of 4 (email from Plaintiff Jerome Daniel to database administrators stating, inter alia, "I believe we had our database stolen by one of our ex employees.").

Plaintiffs filed this action in New York Supreme Court, Nassau County, under docket number 606759/2019. Id., generally. About two weeks later, Plaintiffs filed a series of documents in support of an order to show cause and temporary restraining order. ECF No. 1 ¶¶ 3-7; ECF No. 1-2; ECF No. 1-3; ECF No. 1-4; ECF No. 1-5; ECF No. 1-6. Plaintiffs sought injunctive relief to, inter alia, prevent Defendant from soliciting Remede's employees and customers for a period of two years, and to stop him from using or disclosing Plaintiff's proprietary information or trade secrets; they also sought an order directing Defendant to return

2

any proprietary business information and permitting Plaintiffs to conduct a forensic examination of Defendant's computer and email accounts to ensure all such information was returned. See ECF No. 1-2.[1] Defendant filed a notice of removal, removing the action to this Court on the ground of alleged diversity jurisdiction. ECF No. 1, generally. Plaintiffs filed their motion to remand ("Mot. Rmd."), arguing that removal was improper because the amount in controversy is less than $75,000. Mot. Rmd., ECF No. 11. The District Court thereafter referred Plaintiffs' motion to the undersigned.

---

[1] As discussed below, the Court recommends a finding that the amount of controversy is satisfied based on the face of the Complaint, because under both contract and equitable claims, Plaintiffs seek relief against Defendant's use of the allegedly stolen materials, limitations on his solicitations, and a return of materials with a value of over $37,240. Of their relief paragraphs in the Complaint, Plaintiffs focus on their request for monetary damages and do not explicitly request injunctive relief. See ECF No. 1-1 ¶¶ 37-105. To the extent one may disagree that the Complaint does request injunctive relief, it would be proper to consider the motion filed with the request for a temporary restraining order and preliminary injunction to confirm that injunctive relief is, in fact, at issue in this case.

Under 28 U.S.C. § 1446(b)(3), ". . . if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." The request for a temporary restraining order and preliminary injunction filed in state court, along with their supporting papers, are a motion or "other papers" that may be considered on removal. See, e.g., Int'l Ass'n of Fire Fighters v. City of Atl. City N.J., No. 17 Civ. 725 (RMB/JS), 2017 U.S. Dist. LEXIS 18908, at *10-11, 2017 WL 54894, *4 (D.N.J. Feb. 10, 2017) (preliminary injunction brief was "other paper" under 28 U.S.C. § 1446(b)(3)). This is particular clear here where Plaintiff served the summons, complaint, temporary restraining order and request for a preliminary injunction at the same time, confirming that Plaintiffs presented the papers as a unified whole. See Supreme Court, Nassau County Docket No. 606759/2019, Document Nos. 18-19 (affidavits of service of the summons, complaint, temporary restraining order and request for preliminary injunction).

It may be said that the preliminary injunction request clarifies that the subject computer downloads were of Plaintiff's entire database, not merely a portion of the various databases mentioned in the Complaint. ECF No. 1-3 ¶ 68 ("Between January 28, 2019 and February 1[,] 2019[,] upon information and belief, Shedrick Hamer cleaned out Remede Consulting Group's lead, client and temp databases to use for his own gain personally or at a competitor."). Thus, Plaintiffs' entire $11.1 million in 2018 revenue described by Plaintiffs is related to the entire database allegedly taken by Defendant. ECF No. 1-1 ¶¶ 21, 23.

3

## II.     LEGAL ANALYSIS

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). The statutes concerning removal are strictly and narrowly construed, "resolving any doubts against removability." Purdue Pharma L.P. v. Kentucky, 704 F.3d 208, 213 (2d Cir. 2013) (quoting Lupo v. Human Affairs Int'l, Inc., 28 F.3d 269, 274 (2d Cir. 1994)). The burden of proving that jurisdiction is proper is on the party that removed the action. See 28 U.S.C. § 1446(c)(2)(B); Montefiore Med. Ctr. v. Teamsters Local 272, 642 F.3d 321, 327 (2d Cir. 2011). District courts have original jurisdiction where there is diversity of citizenship between the parties and an amount in controversy exceeding $75,000. 28 U.S.C. § 1332. Where the complaint seeks either nonmonetary relief or "a money judgment, but the State practice either does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded[,]" the notice of removal may assert the amount in controversy, and removal is proper on the basis of that amount "if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the amount specified in [28 U.S.C. § 1332(a)]." See 28 U.S.C. §§ 1446(c)(2)(A)-(B); see also Dart Cherokee Basin Operating Co. v. Owens, 574 U.S. 81, 88 (2014) ("In sum, as specified in §1446(a), a defendant's notice of removal need only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation."). Plaintiffs do not appear to contest the diversity of the parties. See Compl ECF No. 1-1 ¶¶ 2-3; ECF No. 1 ¶ 9 (noting diversity among the parties based on allegations in the

4

complaint).  Although Defendant claims in the notice of removal that "Plaintiffs allege potential damages of at least $327,600," ECF No. 1 ¶ 10, Plaintiffs contend the amount in controversy is not met,  Mot. Rmd. ECF No. 11, generally.

### a. The Relief Requested By Plaintiffs Determines The Amount In Controversy

In these circumstances, the court looks to the value of the claims made in the complaint to determine if jurisdiction is proper.  "The starting point for determining the amount in controversy is the type of relief requested." Pollock v. Trustmark Ins. Co., 367 F. Supp. 2d 293, 297 (E.D.N.Y. 2005).  "[T]he jurisdictional test is applicable to that amount that flows directly and with a fair degree of probability from the litigation, not from collateral or speculative sources." Kheel v. Port of New York Auth., 457 F.2d 46, 49 (2d Cir. 1972) (citing Rosado v. Wyman, 414 F.2d 170 (2d Cir. 1969), rev'd on other grounds, 397 U.S. 397 (1970) (further citations omitted)); see also Kheel, 457 F.2d at 49 ("[T]he amount in controversy is calculated from the plaintiff's standpoint; the value of the suit's intended benefit or the value of the right being protected or the injury being averted constitutes the amount in controversy when damages are not requested.") (internal quotation marks & citations omitted).  When unified plaintiffs file multiple claims for relief against a single defendant, the court may aggregate those claims to determine the amount in controversy to the extent the damages sought do not overlap. See Hall v. Earthlink Network, Inc., 396 F.3d 500, 507 (2d Cir. 2005) (recognizing validity of aggregation of claims of actual and consequential damages, breach of implied covenant of fair dealing, and negligent appropriation); Pollock, 367 F. Supp. 2d, at 301 ("No case, however, allows the aggregation of claims which seek the same damages in claims under varying theories.").  Here, Plaintiffs, a business and its owner, have brought claims for breach of contract, breach of fiduciary duty of loyalty and good faith, conversion, unjust enrichment, misappropriation of

5

trade secrets, and unfair competition – all of which the Court may consider in the aggregate to the extent the damages do not overlap.  See Compl., ECF No. 1-1 ¶¶ 37-105.

Plaintiffs argue that the amount in controversy is less than $75,000 because only limited damages have accrued under their breach-of-contract theory, and "[t]he claims in Plaintiff's complaint seek the same damages in claims under varying theories."  Reply, ECF No. 15 p. 6 of 8; ECF No. 11-2 p. 4 of 15.  Plaintiffs concede that $32,760 has accrued as lost revenue and that an additional $5,000 has accrued as liquidated damages under the Employment Agreement, but they contend this $37,760 figure is the extent of the accrued damages under all of their causes of action in the aggregate.  See Mot. Rmd. ECF No. 11-1 ¶¶ 16-19.

Given the broad relief sought in the Complaint, the Court must consider not only these accrued damages but the amount that flows directly and with a fair degree of probability from the litigation.  As discussed below, the relief Plaintiffs seek under the Agreement, if granted, would entitle Plaintiffs to additional injunctive relief worth over $37,240 on its own.  Plaintiffs' claims for conversion and unjust enrichment are also worth over $37,240 because the property allegedly taken is worth at least that much.

### b. The Value Of Plaintiffs' Breach-of-contract Claims Exceeds $75,000

Under Paragraph 13 of the Employment Agreement, if Defendant violated certain provisions (discussed below), Plaintiffs are "entitled to either or both: (i) a preliminary or permanent injunction in order to prevent the continuation of such harm, and (ii) liquidated damages in the amount of F[ive] T[housand] . . . [dollars] ($5,000) for each breach of paragraph 11 of th[e] Agreement."  Mot. Rmd. ECF No. 11-4 ¶ 13; Compl. ECF No. 1-1 ¶ 35.  Plaintiffs allege that Defendant has, inter alia, breached paragraphs 10 and 11 of the Agreement.  Id. ¶¶ 38-47.  Paragraph 10 provides:

6

> Under no circumstances shall Employee remove from the Company's offices any of the Company's books, records, documents or medical staffing lists, or any customer list or copies of such documents, without the express written permission of the Company, nor shall Employee make any copies of such books, records, documents, or medical staffing lists for use outside the Company's office, without the express written permission of the Company. At such time as the employment relationship is terminated, Employee agrees to immediately return any and all such company books, records, documents, medical staffing and customer lists in Employee's possession, custody, or control, to the Company.

Mot. Rmd. ECF No. 11-4 ¶ 10. Paragraph 11 is a non-solicitation clause which provides:

> Employee agrees that during the relationship established by this Agreement, and for a period of two (2) years following the termination of this Agreement, Employee shall not directly or indirectly solicit: (1) other employees, consultants, sub-contractors, agents, or other personnel of the Company, to leave the Company; (2) the business of existing Company medical staffing, or those who have been medical staffing of the Company during the two (2) year period immediately preceding termination of this Agreement; or (3) the business of the Clients.

Mot. Rmd. ECF No. 11-4 ¶ 11. To succeed on these breach-of-contract claims, Plaintiffs would need to establish that the Agreement was a valid contract and that Defendant breached these paragraphs. See, e.g., Diesel Props S.r.l. v. Greystone Bus. Credit II LLC, 631 F.3d 42, 52 (2d Cir. 2011) (applying New York law). If Plaintiffs were to succeed on these claims, they would be entitled to injunctive relief under the Agreement "to prevent the continuation of such harm." Mot. Rmd. ECF No. 11-4 ¶ 13. This is the same relief sought in the preliminary injunction motion filed in state court. See ECF No. 1-3 ¶¶ 3(2)-(4). Accordingly, the Court must consider the value of the injunctive relief that would flow from a breach of either or both paragraphs. See Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 347 (1977) ("In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation."); A.F.A. Tours, Inc. v. Whitchurch, 937 F.2d 82, 87–88 (2d Cir.1991) ("Where the plaintiff seeks injunctive relief, the value of his claim is generally assessed with reference to the right he seeks to protect and measured by the extent of the

7

impairment to be prevented by the injunction. In calculating that impairment, the court may look not only at past losses but also at potential harm.") (citations omitted); Beacon Constr. Co. v. Matco Elec. Co., 521 F.2d 392, 399 (2d Cir. 1975) ("We agree with appellee that the amount in controversy is not necessarily the money judgment sought or recovered, but rather the value of the consequences which may result from the litigation.") (citing Smith v. Adams, 130 U.S. 167, 175 (1889)); Am. Standard, Inc. v. Oakfabco, Inc., 498 F. Supp. 2d 711, 717 (S.D.N.Y. 2007) ( "Because that amount is measured from the plaintiff's perspective, the value of the requested relief is the monetary value of the benefit that would flow to the plaintiff if injunctive or declaratory relief were granted.").

The Complaint provides the value of injunctive relief to correct Defendant's alleged violation of Paragraph 10 of the Agreement: "[t]he ongoing use of the temp and client databases by the defendant represent hundreds of thousands of dollars of lost business and profit for the Plaintiff. The very nature of the business conducted by the Plaintiff hinges on the access and use of these private databases." Compl. ECF No. 1-1 ¶ 45; see id. ¶ 77 ("Therefore these leads represent an enormous loss of revenue for RCG if they are contacted and put to work by [Defendant] or his current employer . . . ."); Affidavit of Jerome Daniel ECF No. 11-1 ¶ 13 ("The potential loss chart [describing $32,760 as the average potential losses per lead] was not included in the complaint as a means of demanding a specific amount in damages but rather was included to emphasize to the Court the potential danger if our temporary restraining order and request for a permanent injunction was not granted."); ECF No. 10 p. 2 (letter from Plaintiffs' counsel confirming "The injunction is what is at the heart of this action . . . ."). Thus, the amount in controversy is met because the injunctive relief to retrieve or to enjoin use of the allegedly stolen

8

information from Defendant is worth "hundreds of thousands of dollars of lost business and profit for the Plaintiff." Compl. ECF No. 1-1 ¶ 45.

The value of injunctive relief to prohibit Defendant from violating the non-solicitation provisions of Paragraph 11 of the Agreement is also worth in excess of $37,240. This paragraph prohibits Defendant from soliciting "the business of existing company medical staffing, or those who have been medical staffing of the Company during the two year period" preceding Defendant's separation from Plaintiffs' employ and "the business of Clients." Mot. Rmd. ECF No. 11-4 ¶ 11. Plaintiffs allege that an average contract is worth $32,760. ECF No. 1-1 ¶¶ 19-20. Plaintiffs do not have just one contract to lose, however; thus the value of the injury to be prevented is not limited to a single contract. Rather, Plaintiffs allege they generated $11.1 in revenue in 2018 alone, which means there is at least that much business to be protected from solicitation by Defendant. See, e.g., Redi-Mix Solutions, Ltd. v. Express Chipping, Inc, No. 6:16 Civ. 298 (MHS) (KNM), 2016 WL 3406254, at *3, 2016 U.S. Dist. LEXIS 78043, at *6-9 (May 3, 2016) (for purposes of determining the amount in controversy, the revenue derived from customer base was an appropriate measure of the value of an injunction to preclude Defendants from soliciting those customers), report & recommendation adopted, 2016 WL 3277266, 2016 U.S. Dist. Lexis 77565 (E.D. Tex. June 14, 2016). An injunction enforcing the non-solicitation provision of the Agreement and protecting Plaintiffs' business is therefore more likely than not to be worth well in excess of $37,240. At an absolute minimum, if Defendant successfully solicits even a single average contract, that potential harm, combined with the damages which have allegedly already accrued herein ($37,240) are likely to be $70,000 and, together with reasonable legal fees and costs, in excess of the $75,000 required for diversity jurisdiction.

### c. The Value Of Plaintiffs' Conversion And Unjust Enrichment Claims Exceeds $37,240

Separate and apart from the value of these claims for breach of contract, Plaintiffs' equitable claims also put more than $37,240 in controversy. Plaintiffs bring two equitable claims, unjust enrichment and conversion, which are based on the allegations that Defendant unjustly acquired some or all of the RCG database which "generated $11.1 million in revenue in 2018" and that Defendant improperly acquired 36,953 leads, each of which is potentially worth, on average, $32,760. Compl. ECF No. 1-1 ¶¶ 19-24, 70-80. In addition to the $37,760 in controversy that Plaintiffs concede has accrued, the Court looks to these two equitable claims to determine if they, separate and apart from the contract-based injunctive relief discussed above, are more likely than not to bridge the $37,240 gap to find $75,000 in controversy.

"[U]nder New York law, '[t]he usual measure of damages for conversion is the value of the property at the time and place of conversion, plus interest.'" Red Hook Container Terminal LLC v. S. Pac. Shipping Co., No. 15 Civ. 01483 (AJN), 2019 U.S. Dist. LEXIS 160395, at *13 (S.D.N.Y. Sep. 16, 2019) (second alteration in original) (quoting Fantis Foods, Inc. v. Standard Importing Co., 49 N.Y.2d 317, 325-26, 425 N.Y.S.2d 783 (N.Y. 1980)); Rajeev Sindhwani, MD., PLLC v. Coe Bus. Serv., Inc., 52 A.D.3d 674, 676, 861 N.Y.S.2d 705 (2d Dep't 2008).

The proper measurement of Plaintiffs' damages under both of these equitable causes of action "is the value that Defendant[] would have paid had the parties negotiated, in good faith, for [Plaintiffs'] confidential [proprietary information] at the time that [it] was misappropriated by Defendant[]." Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC, 813 F. Supp. 2d 489, 534 (S.D.N.Y. 2011). Although Plaintiffs do not directly provide a market value for their proprietary information, they allege that the RCG Database allegedly taken "generated $11.1 million in revenue in 2018." Compl. ECF No. 1-1 ¶ 21. Common sense dictates that any

10

fair purchase price for the database would therefore be, at a minimum, in excess of $37,240. See Naji v. Lincoln, 665 F. App'x 397, 401 n.2 (6th Cir. 2016) ("[C]ourts may use their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements.") (quoting Roe v. Michelin N. Am., Inc., 613 F.3d 1058, 1062 (11th Cir. 2010)).

Accordingly, Plaintiffs' claims, when combined with at least the admitted contract-based relief discussed above, satisfy the required amount in controversy.

### III.   CONCLUSION

For the foregoing reasons, this Court respectfully recommends that Plaintiffs' motion to remand be denied because Plaintiffs acknowledge $37,760 in damages and their other claims put more than $37,240 at issue, satisfying the amount in controversy for diversity purposes.

IV.     **OBJECTIONS**

A copy of this report and recommendation is being provided to the parties' counsel via ECF. Any written objections to this report and recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of this report and recommendation either by the District Court or Court of Appeals. See Thomas v. Arn, 474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive right to appeal."); Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate [judge]'s report operates as a waiver of any further judicial review of the magistrate [judge]'s decision.").

SO ORDERED.

Dated:  Brooklyn, New York
        February 14, 2020

*Vera M. Scanlon*
VERA M. SCANLON
United States Magistrate Judge