UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| REMEDE CONSULTING GROUP INC., and JEROME DANIEL, | **MEMORANDUM & ORDER 19-CV-3950 (NGG) (VMS)** |
| Plaintiffs, | |
| -against- | |
| SHEDRICK HAMER, | |
| Defendant. | |

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Remede Consulting Group Inc. ("Remede") brought this action in New York Supreme Court, Nassau County, against its former employee, Defendant Shedrick Hamer, claiming that he breached his employment contract when he accessed and appropriated proprietary information and solicited another employee before leaving the company to join a competitor. (*See* Compl. (Dkt. 1-1).)[1] Remede also asserts causes of action for breach of fiduciary duties, conversion, unjust enrichment, misappropriation of trade secrets, and unfair competition, and seeks a preliminary injunction. Mr. Hamer, a Georgia resident, successfully removed the case to federal court based on diversity of citizenship. *See Remede Consulting Grp. Inc. v. Hamer*, No. 19-cv-3950 (NGG) (VMS), 2020 WL 1062963, at *1 (E.D.N.Y. Mar. 5, 2020). Now before the court is Mr. Hamer's Motion to Dismiss the Complaint pursuant to Fed. R. Civ. Pro. 12(b)(6), as well as Remede's Motion for a Preliminary Injunction. (*See* Pls.' Mot. for Injunctive Relief ("Mot. for Prelim. Inj.") (Dkt. 1-3); Def.'s Mem. in Supp. of Mot. to Dismiss and in Opp. to Prelim. Inj. ("Mem.")

---

[1] Remede's President and Chief Executive Officer, Jerome Daniel, is also named as a plaintiff in his individual capacity, but the Complaint fails to allege any relationship between Daniel and Hamer upon which a claim in contract or tort could be asserted.

1

(Dkt. 20-14); Pls.' Mem. in Opp. to Mot. to Dismiss and Reply to Def.'s Opp. to Prelim. Inj. ("Opp.") (Dkt. 23); Def.'s Reply ("Reply") (Dkt. 24).) For the following reasons, Mr. Hamer's Motion to Dismiss is DENIED as to the first cause of action, for breach of contract, and GRANTED as to the other claims asserted. Remede's Motion for a Preliminary Injunction is DENIED.

## I.   BACKGROUND

### A.   Facts[2]

Remede is a professional and technical staffing agency that recruits and places health care professionals with its clients, which include medical facilities like hospitals and nursing homes. (Compl. ¶ 5.) Remede hired Mr. Hamer as a Travel Recruiter, and the parties executed an Employment Agreement on December 29, 2015. (*Id.* ¶ 6; Employment Agreement (Dkt. 1-6) at ECF p. 3.) Soon after, he was promoted to Manager, Recruitment and Accounts. (Compl. ¶ 6.) Mr. Hamer worked for Remede until he resigned on February 6, 2019. (*Id.* ¶ 12.) During that time, he worked remotely from his home in Atlanta, which he shared with his husband, Eli Lewis, who also worked for Remede as a Credentialing Specialist. (*Id.* ¶ 27.) Mr. Lewis also resigned from the company on February 6, 2019. (*Id.* ¶ 46.) Soon after leaving Remede, Mr. Hamer went to work for a competitor medical staffing company, ProCare USA. (*Id.* ¶¶ 25-26.)[3]

---

[2] The court bases the statement of facts on Remede's Complaint, which the court accepts as true for purposes of the motion to dismiss, drawing all reasonable inferences in Remede's favor. *See N.Y. Pet Welfare Ass'n v. City of New York*, 850 F.3d 79, 86 (2d Cir. 2017).

[3] Remede also alleges that Mr. Hamer created his own recruitment database, TravelNurse911.com, and that Mr. Hamer and Mr. Lewis's Facebook profiles indicated that they both worked there at some point after leaving Remede. (Id. ¶ 33.)

As part of its business, Remede subscribes to database services that provide it with lists of potential candidates for recruitment. (*Id.* ¶¶ 9-10.)[4] Among those services are Travel Nurse Source ("TNS") and Allied Travel Careers ("ATC"). (*Id.* ¶ 9.) Every month, Remede may search and unlock up to 500 recruitment leads from TNS, and up to 250 leads from ATC. (*Id.* ¶ 10.) Each lead contains biographical information, including the candidate's name, contact information, professional experience, and licensing status, among other relevant details. (*Id.* ¶ 10.) Typically, a Remede recruiter will unlock a lead from a database and then transfer it into Remede's internal Applicant Tracking System, Contingent Talent Management ("CTM"). (*Id.* ¶ 11.) Remede estimates that for each successfully placed candidate, the company earns $32,760 in revenue. (*Id.* ¶ 20.) In 2018, the company earned $11.1 million in revenue from all of the client, employee, and prospect databases housed in CTM. (*Id.* ¶ 21.)

After Mr. Hamer left Remede, the company contacted its database provider, Track5 Media ("Track5"). (*Id.* ¶ 18.) Based on information from Track5, Remede determined that in his last weeks with the company, on January 23, January 31, and February 1, 2019, Mr. Hamer unlocked 589 leads from TNS and 500 leads from ATC, none of which were transferred to CTM where other Remede employees would have access to them. (*Id.* ¶¶ 14-18.) As a result, Remede claims that Mr. Hamer deprived it of the useful information it paid for, including all its allotted leads from ATC for January and February 2019. (*Id.* ¶ 16.) In addition, Remede determined that Mr. Hamer exported and downloaded 36,953 recruitment leads and 3,183 client files from CTM. (*Id.* ¶¶ 56-58.)

On May 16, 2019, Remede brought this action in state court. (*See* Compl.) In the Complaint, Remede claims that Mr. Hamer

---

[4] Remede's Complaint contains two ¶ 9's and two ¶ 10's, on ECF pp. 5-6.

breached his Employment Agreement by accessing proprietary company information and keeping it for his own use. (*Id.* ¶¶ 39-45.) In addition, Remede alleges that Mr. Hamer solicited Mr. Lewis and potentially another Remede contractor to the leave the company, in express violation of his contract's non-solicitation clause. (*Id.* ¶¶ 46-47.) Besides its contractual claims, Remede alleges that Mr. Hamer breached his fiduciary duties of loyalty and good faith (*id.* ¶¶ 51-61), and asserts claims sounding in common law conversion (*id.* ¶¶ 64-68), unjust enrichment (*id.* ¶¶ 71-79), misappropriation of trade secrets (*id.* ¶¶ 82-93), and unfair competition (*id.* ¶¶ 96-104).

### B.  Contractual Provisions

Mr. Hamer's employment with Remede was governed by the Employment Agreement dated December 30, 2015. (Compl. ¶ 6.)

The Employment Agreement provides in Paragraph 5:

> Termination . . . In the event of any termination of employment . . . Employee agrees that all equipment, materials, documents, records, notes, electronic databases, customer lists and customer information, contracts, software, computer-generated materials, and all other proprietary information and materials of the Company that have been furnished to, or made available to, the Employee, or created or prepared by the Employee incident to the employment of Employee, belong to the Company and shall be promptly returned to the Company on the effective date of termination.

(Employment Agreement ¶ 5.)

In Paragraph 9:

> Trade Secrets and Confidential Information. Employee's position with the Company is such that Employee has, or will have access to, and become familiar with, valuable trade secrets and other confidential information about the

4

> Company's business including, but not limited to, infor-
> mation about the Company's business methods, expansion
> plans, marketing techniques, training programs, pricing in-
> formation, internal corporate plans, systems, and operating
> procedures . . . Employee hereby agrees that, during the em-
> ployment relationship, and for a period of two (2) years
> following termination of that relationship, not to use such
> information for any purpose whatsoever, or to divulge such
> information to any person . . . .

(*Id.* ¶ 9.)

In Paragraph 10:

> <u>Documents</u>. Under no circumstances shall Employee remove
> from the Company's offices any of the Company's books, rec-
> ords, documents or medical staffing lists, or any customer list
> or copies of such documents, without the express written
> permission of the Company, nor shall Employee make any
> copies of such books, records, documents, or medical staffing
> lists for use outside of the Company's office, without the ex-
> press written permission of the Company. At such time as the
> employment relationship is terminated, Employee agrees to
> immediately return any and all such company books, rec-
> ords, documents, medical staffing and customer lists in
> Employee's possession, custody, or control, to the Company.

(*Id.* ¶ 10.)

And in Paragraph 11:

> <u>Non-Solicitation.</u> Employee agrees that during the relation-
> ship established by this Agreement, and for a period of two
> (2) years following the termination of this Agreement, Em-
> ployee shall not directly or indirectly solicit . . . other
> employees, consultants, sub-contractors, agents, or other
> personnel of the Company, to leave the Company . . . .

(*Id.* ¶ 11.)

The Employment Agreement also entitles the company to seek injunctive relief for a breach of paragraphs 9-12 and provides a $5,000 liquidated damages award to Remede for each breach of the non-solicitation clause. (*Id.* ¶ 13.)

## II.   LEGAL STANDARD

"Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. For Humanities, Inc.,* 518 U.S. 415, 427 (1996) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). The parties agreed that the interpretation and enforcement of their contract is governed by New York Law (Employment Agreement ¶ 16,) and the court must honor that choice. *See Woodling v. Garrett Corp.*, 813 F.2d 543, 551 (2d Cir. 1987).[5]

### A.   Motion to Dismiss

To survive a motion to dismiss brought under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint must contain facts that do more than present a "sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. To decide a defendant's motion to dismiss, the court "will accept all factual allegations in the [c]omplaint as true and draw all reasonable inferences in [Plaintiffs'] favor." *L-7 Designs, Inc. v. Old Navy, LLC,* 647 F.3d 419, 429 (2d Cir. 2011). However, the court will "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at

---

[5] When quoting cases, unless otherwise noted, all citations and quotation marks are omitted, and all alterations are adopted.

679. The court must then evaluate the "well-pleaded factual allegations" and "determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. This plausibility analysis "does not impose a probability requirement at the pleading stage," but requires the complaint to provide "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegality." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Twombly*, 550 US. at 556).

### B.  Motion for a Preliminary Injunction

"A preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis omitted). A court "may grant a preliminary injunction where a plaintiff demonstrates irreparable harm and meets one of two related standards: either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party." *Otoe-Missouria Tribe of Indians v. New York State Dep't of Fin. Servs.*, 769 F.3d 105, 110 (2d Cir. 2014).

## III. DISCUSSION

### A.  Motion to Dismiss

#### 1.  Breach of Contract

To state a claim for breach of contract under New York law, "a complaint need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *St. John's Univ., New York v. Bolton,* 757 F. Supp. 2d 144, 158 (E.D.N.Y. 2010) (quoting *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004)).

Here, Remede has easily carried its burden to plead breach of contract. It has offered specific allegations, supported by exhibits, that Mr. Hamer accessed information that the company paid for, retained the information for himself, and failed to return it to the company when he left, in express violation of paragraphs 5 and 10 of his Employment Agreement. (Compl. ¶¶ 38-45.)

Whether Remede has adequately pleaded a breach of the non-solicitation clause is a closer call. The Complaint only mentions one potential solicitation—of Mr. Lewis—but in the accompanying Affirmation, Remede also alleges that Mr. Hamer recruited Shirley Gooden to ProCare USA based on information from the misappropriated database, and offers a document to substantiate the claim, although that exhibit is illegible as submitted. (*See* Aff. of Meir Moza (Dkt. 1-5) ¶ 18; Pl.'s Ex. H (Dkt 1-6) at ECF pp. 81-82.) Whether Mr. Lewis left the company because Mr. Hamer solicited him, as Remede claims, or whether he left because he shared Mr. Hamer's dissatisfaction with Remede, as Mr. Hamer claims, is a factual question not properly resolved on a motion to dismiss. (*See* Compl. ¶ 46; Mem. at 23.) The same may be said of the circumstances surrounding Ms. Gooden's departure. Given the liberal pleading standards for a plaintiff at this stage and given the specificity of the allegations surrounding Mr. Lewis and Ms. Gooden leaving Remede along with Mr. Hamer, those contractual claims survive the Rule 12(b)(6) motion.

### 2. Tort Claims

#### a. *Breach of Fiduciary Duty, Conversion, and Unjust Enrichment*

In addition to its claim that Mr. Hamer breached his employment contract, Remede also asserts claims sounding in breach of fiduciary duty, conversion, and unjust enrichment. "It is a well-established principle that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated." *Clark-Fitzpatrick, Inc. v. Long Island R.*

*Co.*, 70 N.Y.2d 382, 389 (1987); *see also Sommer v. Fed. Signal Corp.,* 79 N.Y.2d 540, 551 (1992) ("A tort may arise from the breach of a legal duty independent of the contract, but merely alleging that the breach of contract duty arose from a lack of due care will not transform a simple breach of contract into a tort.") A breach of fiduciary duty claim that is "entirely duplicative of [a] breach of contract claim" is "subject to dismissal." *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 196 (S.D.N.Y. 2011).[6] Similarly, the court must dismiss any conversion claim that is "predicated on a mere breach of contract" absent "independent facts sufficient to give rise to tort liability." *Fesseha v. TD Waterhouse Inv'r Servs., Inc.*, 305 A.D.2d 268, 269 (1st Dep't 2003). The same applies for unjust enrichment, which is a quasi-contractual claim that "contemplates an obligation imposed by equity to prevent injustice, in the absence

---

[6] In its brief, Remede quotes the New York Court of Appeals in *Western Elec. Co. v. Brenner*, 41 N.Y.2d 291, 295 (1977) to argue that employees owe a duty of loyalty to their employers beyond their employment contracts: "Fundamental to [the employer-employee] relationship is the proposition that an employee is loyal to his employer and is prohibited from acting in a manner inconsistent with his agency or trust and is at all times bound to exercise the utmost good faith and loyalty in the performance of his duties." (Opp. at 24, quotation marks and citation omitted.) That cherry-picked quotation fails to convey that the Court of Appeals dismissed the tort claims in that case, holding: "Contract, not tort, forms the basis of plaintiff's causes of action." *Western Elec. Co.*, 41 N.Y.2d at 293. The court continued: "the basis of the lawsuit stems from a wrong resulting from defendant's breach of his duty of loyalty as an employee. Absent the relationship between the parties, there would be no duty to be breached, no wrong, and, thus, no cause of action." *Id.* at 294. It then favorably quoted an earlier case from the Appellate Division: "Bearing in mind that the contract is one of employment and that the claims are that this defendant transgressed against the duties of loyalty inherent in the employer-employee relationship, it is clear that the controversy arises out of and relates to the contract which is the genesis of the relationship and the consequent duty. It is of no moment that the causes of action are framed in commercial tort." *Id.*

of an actual agreement between the parties," and is displaced by a contract on point. *Georgia Malone & Co. v. Rieder*, 19 N.Y.3d 511, 516 (2012).

Mr. Hamer had a contractual obligation to Remede, but he was not subject to any duty independent of his contract in the way that licensed professionals, common carriers, and bailees are. *Sommer*, 79 N.Y.2d at 551-552. The parties agreed to clear contractual terms that contemplate precisely the conduct described in Remede's complaint. Liability can be apportioned based on those terms and there is no need to resort to any duty in equity beyond them. *See Georgia Malone*, 19 N.Y.3d at 516; *cf. Schwartzco Enters., LLC v. TMH Mgmt., LLC*, 60 F. Supp. 3d 331, 353 (E.D.N.Y. 2014) (allowing breach of fiduciary duty claims to go forward, even if duplicative of breach of contract claims, to the extent they were asserted against a Defendant who was not a party to the breach of contract claims). If Mr. Hamer accessed and absconded with proprietary information that he should have returned, Remede's claims against him are for breach of contract. Therefore, its claims for breach of fiduciary duty, conversion, and unjust enrichment are dismissed as duplicative of its breach of contract claims.

> b.   *Misappropriation of Trade Secrets and Unfair Competition*

"To succeed on a claim for the misappropriation of trade secrets under New York law, a party must demonstrate: (1) that it possessed a trade secret, and (2) that the defendants used that trade secret in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means." *Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 43–44 (2d Cir. 1999). "A customer list developed by a business through substantial effort and kept in confidence may be treated as a trade secret and protected at the owner's instance against disclosure to a competitor,

provided the information it contains is not otherwise readily ascertainable." *Id.* However, lists that contain information about customers are not trade secrets if they "are little more than a compilation of publicly available information," such as contact information. *Art & Cook, Inc. v. Haber*, 416 F. Supp. 3d 191, 196 (E.D.N.Y. 2017)[7]; *see also Town & Country House & Home Serv., Inc. v. Newbery*, 3 N.Y.2d 554, 560 (1958) (holding that a customer list was a trade secret under New York law where "these customers had been screened by respondent at considerable effort and expense, without which their receptivity and willingness to do business with this kind of a service organization could not be known.")

The recruiting leads and customer lists at issue in this litigation are not trade secrets because they were readily available to any competitor of Remede's who was willing to pay a subscription fee for them. The information about recruitment targets was not the product of Remede's work, but rather compilations of available information, packaged and sold to Remede and other companies in the medical recruiting industry. The mere fact that Remede "pays a substantial monthly subscription fee to access" the recruitment leads does not make them a trade secret. (Compl. ¶ 87.) *See Art & Cook*, 416 F. Supp. 3d at 196. Accordingly, Remede's claim for misappropriation of trade secrets must be dismissed.

In their briefs, both sides quote this court's holding in *Sci. Components Corp. v. Sirenza Microdevices, Inc.*, No. 03-CV-1851(NGG)(RML), 2006 WL 2524187, at *29 (E.D.N.Y. Aug. 30, 2006), "[w]here an unfair competition claim duplicates a claim for misappropriation of trade secrets, the two claims generally

---

[7] In *Art & Cook*, the court was considering the definition of trade secrets under the federal Defend Trade Secrets Act ("DTSA"), but as it recognized, there is substantial overlap between the definitions under the DTSA and New York state common law. *See Art & Cook*, 416 F. Supp. 3d at 195 n.3.

rise or fall together." (*See* Mem. at 21; Opp. at 33.) Remede's sixth cause of action for unfair competition is premised entirely on Mr. Hamer's unauthorized use of trade secrets, and it must fall along with its trade secrets claim. (*See* Compl. ¶¶ 95-104.)

### B.   Preliminary Injunction

Two weeks after Remede filed this action in state court in May 2019, it filed an emergency *ex parte* Order to Show Cause seeking a Temporary Restraining Order ("TRO"), and now rests on those arguments as it seeks a preliminary injunction. (*See* Mot. for Prelim. Inj.)[8] Remede asks the court to enjoin Mr. Hamer from soliciting any Remede employees or customers or using or disclosing any of the company's proprietary information, and it also seeks an order directing Mr. Hamer to return any such information to Remede and to permit Remede to conduct a forensic examination of his computer and email accounts, among other relief. (*See id.* ¶ 75.)

Remede is not entitled to a preliminary injunction because it cannot establish that it will suffer irreparable harm without one. "To establish irreparable harm, plaintiffs must demonstrate an injury that is neither remote nor speculative, but actual and imminent." *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989). In addition, "[t]he injury must be one requiring a remedy of more than mere money damages." *Id.* Remede's motion alleged "actual and imminent injury" over 20 months ago, in a different court, and has not advised this court of any further relevant injury even as it has briefed two subsequent motions that implicate those claims. At issue in the litigation is a set of

---

[8] Remede has not supplemented that emergency filing since the case was removed to federal court over a year and half ago.

recruiting leads from January and February 2019, containing information that is likely out of date, such as the current employment status of the people listed there. Moreover, Remede has provided the court with an estimate of its revenue for each recruitment candidate it successfully places, which could form the basis of a pecuniary remedy. (*See* Mot. for Prelim. Inj. ¶ 21.) The court is also mindful that issuing an injunction against Mr. Hamer, an individual in the medical recruiting field who earned less than $60,000 annually while employed at Remede, (Decl. of Shedrick Hamer (Dkt. 20-7) ¶ 6), could cause him significant hardship, *see Iron Mountain Info. Mgmt., Inc. v. Taddeo*, 455 F. Supp. 2d 124, 141 (E.D.N.Y. 2006). Therefore, Remede has not met its burden to show that injunctive relief is warranted.

## IV.  CONCLUSION

For the foregoing reasons, Mr. Hamer's Motion to Dismiss is DENIED as to the first cause of action for breach of contract (Compl. ¶¶ 37-49) and GRANTED as to the remainder of Remede's claims (Compl. ¶¶ 50-105). Remede's Motion for a Preliminary Injunction is DENIED. The parties are DIRECTED to contact the chambers of Magistrate Judge Vera M. Scanlon concerning the next steps in this case.


SO ORDERED.


Dated:      Brooklyn, New York
            February 8, 2021

                                             /s/ Nicholas G. Garaufis
                                            NICHOLAS G. GARAUFIS
                                            United States District Judge

13